UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWINA COOPER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No. 14-00102 (RJL) |
| DISTRICT OF COLUMBIA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

(December 30, 2014) [Dkt. ##14, 15]

FILED
DEC 3 0 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Edwina Cooper—as parent and next friend of her son, R.C.—("plaintiff") commenced this action against the District of Columbia ("defendant") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, on January 27, 2014, seeking injunctive and declaratory relief that the District of Columbia Public Schools ("DCPS") violated the IDEA and denied R.C. access to a free appropriate public education, as well as related attorney's fees and costs. *See* Compl. [Dkt. #1]. Now before the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. Summ. J. [Dkt. #14]; Def.'s Cross Mot. Summ. J. [Dkt. #15]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the Court GRANTS defendant's Cross Motion for Summary Judgment and DENIES plaintiff's Motion for Summary Judgment.

## BACKGROUND

The IDEA guarantees children with disabilities the right to a free appropriate public education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). Parents who believe their child's rights under the IDEA have been violated may file an administrative due process complaint and are entitled to an impartial due process hearing. *Id.* § 1415(f). Any party aggrieved by the outcome of the administrative hearing may file a civil action in a district court of the United States. *Id.* § 1415(i)(2)(A).

R.C. is a disabled student entitled to special education under the IDEA. He received his last comprehensive psycho-educational and clinical evaluation in April 2010. Plaintiff's Statement of Material Facts ("Pl.'s Facts") ¶ 4 [Dkt. #14-1]; Administrative Record ("AR") at 36. This evaluation diagnosed R.C. with several cognitive disabilities, including a full scale I.Q. of 81. *See* Pl.'s Facts ¶ 5; AR at 40-41. Based on R.C.'s plethora of attentional and executive difficulties, the evaluator recommended that R.C. receive access to various assistive technologies and special classroom accommodations. Pl.'s Facts ¶ 7; AR at 52-54. R.C. was deemed eligible for special education on February 8, 2011. AR at 243.

R.C. attended Kingsbury Day School ("Kingsbury") between 2010 and 2013, where he was educated in a "full time out of [general education] setting." AR at 132. A multidisciplinary team ("MDT") convened on October 25, 2012 to review R.C.'s Individualized Education Program ("IEP"). Pl.'s Facts ¶ 9; AR at 217. During this meeting, DCPS considered transitioning R.C. from Kingsbury to a less restrictive environment ("LRE") in a general education setting in order to facilitate R.C.'s

educational goals. Pl.'s Facts ¶ 9; AR at 222-223. Although plaintiff, who attended the meeting, "seem[ed] receptive" to the possibility of a LRE, the MDT did not reach a decision. AR at 222. Between January and March 2013, Alan Shih ("Shih"), a DCPS Progress Monitor, observed R.C. in a classroom setting to evaluate the appropriateness of such a transition. AR at 227-230; 232-235. R.C.'s MDT/IEP team then reconvened on March 19, 2013 to discuss R.C.'s transition at further length. Pl.'s Facts at ¶ 14-15, AR at 238-239. Plaintiff was once again in attendance. AR at 238-239. During the meeting, Shih opined that R.C. would benefit from instruction in a general education setting. Pl.'s Facts ¶ 17; AR at 238-239. The MDT/IEP team once again deferred making any decisions about R.C.'s placement and focused instead on formulating his IEP, which required 29.75 hours of weekly specialized instruction, as well as 90 minutes of behavioral support services and 45 minutes of occupational therapy each week. AR at 243-255.

The MDT met on May 23, 2013 to continue discussions about moving R.C. to a general education environment. AR at 271-272. No decision was made, and the group reconvened on or around June 4, 2013. Pl.'s Facts ¶ 28; AR at 272; 276. During this meeting, DCPS informed plaintiff that R.C. would transition to Eastern Senior High School ("Eastern"), a public general-education setting. AR at 273-274. Plaintiff objected, averring that DCPS had unilaterally decided to modify R.C.'s placement. AR at 274. Shortly thereafter, on June 5, 2013, R.C.'s IEP was amended, reducing his weekly specialized instruction hours from 29.75 to 24.25, but maintaining R.C.'s 90 minutes of weekly behavioral support and 45 minutes of weekly occupational therapy.

3

AR at 309. That same day, DCPS issued a prior written notice memorializing its decision to transition R.C. to a general education setting. Pl.'s Facts ¶ 37; AR at 320-21.

On August 20, 2013, plaintiff filed a due process complaint seeking relief from DCPS's alleged failure to: (1) re-evaluate R.C. within three years of his 2010 evaluation, (2) design a suitable IEP, (3) provide an appropriate location of services; and (4) follow the proper procedures for determining R.C.'s location of services. Pl.'s Facts ¶ 38; AR at 335-345. A due process hearing convened on October 22, 2013. Pl.'s Facts ¶ 43; AR at 3. During the hearing, DCPS sought to introduce Mr. Shih's testimony, despite failing to notify plaintiff that it would call Mr. Shih as a witness. Pl.'s Facts ¶ 44. The Hearing Officer ("HO") nonetheless allowed Mr. Shih to testify. Pl.'s Facts ¶ 46; AR at 835. The HO issued his decision shortly thereafter on October 30, 2013, finding that R.C. had not been denied a FAPE. Pl.'s Facts ¶ 51; AR at 20. Plaintiff appealed the decision to this Court on January 27, 2014 and the parties promptly cross-moved for summary judgment. *See* Pl.'s Mot. Summ. J.; Def.'s Cross Mot. Summ. J.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the evidence in the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When evaluating cross motions for summary judgment, "the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Select Specialty Hosp. – Bloomington, Inc. v. Sebelius*,

4

774 F. Supp. 2d 332, 338 (D.D.C. 2011) (quoting *GCI Health Care Ctrs., Inc. v. Thompson*, 209 F. Supp. 2d 63, 67-68 (D.D.C. 2002)). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In deciding the appeal, this Court must grant relief as appropriate, based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). While the Court makes an independent determination, it "must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Simmons v. District of Columbia*, 355 F. Supp. 2d 12, 16 (D.D.C.2004) (quoting *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993)). The burden of proof rests with the party challenging the administrative determination, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).

## ANALYSIS

The relief sought by plaintiff in this action is four-fold. Plaintiff first seeks a declaration that the District violated the IDEA. Plaintiff also seeks an order requiring the District to: (1) place and fund R.C. at Kingsbury; (2) perform a triennial re-evaluation; and (3) reconvene R.C.'s multidisciplinary team IEP meeting. As discussed more fully below, I find that summary judgment in favor of defendant is appropriate.

I.     **Compliance with IDEA Procedural Requirements**

Plaintiff alleges two procedural deficiencies: (1) DCPS's failure to perform a triennial re-evaluation of R.C.'s disabilities and (2) DCPS's decision to change R.C.'s location of services to Eastern before completing his June 2013 IEP. *See* Pl.'s Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 5-11. Procedural violations of the IDEA do not, however, necessarily lead to a denial of FAPE. *Schoenbach v. District of Columbia*, 309 F. Supp. 2d 71, 78 (D.D.C. 2004). To the contrary, such violations are only actionable if they compromise the student's educational opportunities or seriously infringe parents' participation in their child's education. *Lesesne v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006); *see* 20 U.S.C. § 1415(f)(3)(E)(ii). If a disabled child receives a FAPE despite technical violations of the IDEA, the school district has fulfilled its statutory obligation. *Hawkins v. District of Columbia*, 692 F. Supp. 2d 81, 84 (D.D.C. 2010) (citation and internal quotation marks omitted). Because neither of the alleged defects violated plaintiff's or R.C.'s substantive rights, they must be "disregarded as harmless." *See Razzaghi v. District of Columbia*, 03cv1619(HHK), 2005 WL 3276318, at *8 (D.D.C. Sept. 28, 2005).

A. **Triennial Reevaluation**

Plaintiff first contends that DCPS failed to timely re-evaluate R.C. Pl.'s Mem. at 5. I agree. The IDEA requires local education agencies to reevaluate students at least once every three years unless the parent and the local education agency deem such reevaluation unnecessary. 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R. § 300.303(b)(2). It is silent, however, as to whether the triennial period commences from the date of a student's

last evaluation or from the date of the student's eligibility determination. I disagree with the HO's construction, which favors the latter interpretation. The IDEA plainly requires that a *reevaluation* be conducted every three years. As a matter of practical construction, this requirement premises the time for a new evaluation on the date of the student's previous assessment.

Here, R.C. underwent a comprehensive psychological and clinical evaluation in April 2010. AR at 36. Because there is no evidence in the record of any subsequent reevaluation, I find that DCPS failed to conduct R.C.'s triennial reevaluation. However, because plaintiff has not alleged, much less proven, the R.C. suffered any educational harm from this violation, I must, nevertheless, grant summary judgment in favor of defendant on this point.

### B. Predetermination of Location of Services

Plaintiff next contends that DCPS erroneously "predetermined" R.C.'s location of services before formulating his June 2013 IEP. Pl.'s Mem. at 8-11. Although a more serious procedural deficiency, I find that it, too, was harmless. The IDEA guarantees parents of disabled children the opportunity to participate in decisions regarding their child's evaluation and placement. 20 U.S.C. § 1414(e); 34 C.F.R. § 300.327; *see J.N. v. District of Columbia*, 677 F. Supp. 2d 314, 320 (D.D.C. 2010) ("The IDEA's procedural safeguards help ensure that parents are able to participate fully in decisions affecting their child's education." (citations omitted)). Procedural inadequacies that "seriously infringe upon the parents' opportunity to participate in the IEP formulation process . . . clearly result in the denial of a FAPE." *A.I. ex rel. Iapalucci v. District of Columbia*, 402 F.

Supp. 2d 152, 164 (D.D.C. 2005) (citations omitted). A school's decision to change a child's placement before formulating an IEP is, at base, a procedural violation of the IDEA. *See Spielberg v. Henrico Cnty. Pub. Sch.*, 853 F.2d 256, 258-59 (4th Cir. 1988) (finding a procedural violation when the school district changed the student's placement before developing a new IEP); *see also Holdzclaw v. District of Columbia*, 524 F. Supp. 2d 43, 48 (D.D.C. 2007) (noting the general rule that "placement must be determined *after* the IEP is completed" (emphasis added)).

The HO correctly determined that DCPS committed a procedural violation when it decided to transfer R.C. to Eastern *before* finalizing the June 2013 IEP. *See* AR at 16. This misstep is not, however, fatal because it did not preclude plaintiff's meaningful participation in R.C.'s education. Indeed, plaintiff attended all of the IEP and LRE meetings discussing R.C.'s potential transition. In particular, plaintiff was present at the October 25, 2012 meeting when the transition was first broached, as well as at the subsequent meetings in March, May, and June 2013 further discussing the pending change. *See* AR at 196, 243, 271, 276. At each meeting, plaintiff had substantial input into the IEP baselines, annual goals, special education and related services requirements that the MDT developed on behalf of R.C. *See* AR at 238-239, 271-274. While plaintiff objects to R.C.'s ultimate placement, her disagreement does not constitute exclusion from the decision-making process. To the contrary, the record indicates that plaintiff was actively engaged in each of the MDT meetings precipitating R.C.'s transition. *See Paolella v. District of Columbia*, 210 Fed. App'x 1, 3 (D.C. Cir. 2006) (finding that parental involvement in the IEP evidences meaningful participation). I therefore agree

with the HO that plaintiff has not demonstrated any actionable harm to R.C.'s education as a result of DCPS's actions.

## II. Suitability of the June 2013 IEP

Next, plaintiff claims that the June 2013 IEP was inappropriate because it reduced R.C.'s specialized instruction services by 5.5 hours each week. Pl.'s Mem. at 11-13. The HO heard, and rejected, this argument and this Court, according that decision due weight, does the same. *See* AR at 16-17. An IEP must be "reasonably calculated" to confer educational benefits on the child, but need not "maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200 (1982); *see Jenkins v. Squillacote*, 935 F.2d 303, 305 (D.C. Cir. 1991) (noting that the inquiry is not whether a different placement "might be more appropriate"). Accordingly, an IEP succeeds when it "enable[s] the child to achieve passing marks and advance from grade to grade" in the "least restrictive environment" possible. *See K.S. v. District of Columbia*, 962 F. Supp. 2d 216, 220 (D.D.C. 2013).

Here, R.C.'s March and June 2013 IEPs contain identical educational goals, behavioral support services, and occupational therapy requirements. *Compare* AR at 255, *with* AR at 309. The March IEP, however, requires 29.75 hours of specialized instruction each week, inclusive of lunch, whereas the June 2013 IEP requires only 24.25 hours of specialized instruction each week, exclusive of lunch. AR at 169. As was explained to the HO, the reduced instructional hours in the June IEP reflected *actual* in-class instruction time, whereas the March IEP reflected the *total hours* of Kingsbury's

9

program, including lunch and transition time. AR at 856-57, 891-92. But for the 5.5 hour reduction, the June 2013 contains materially similar accommodations to the March 2013 IEP, accommodations that Kingsbury administrators tellingly viewed as appropriate to R.C.'s educational needs. *See* AR at 803-05. The June IEP, moreover, facilitates the IDEA's explicit goal of educating children like R.C. in an "integrated setting with children who do not have disabilities." *See K.S.*, 962 F. Supp. 2d at 220. This Court therefore finds the IEP suitable and will not overturn the HO's determination on this point.

### III.  Location of Services

Plaintiff next argues that Eastern was an inappropriate location of services. Pl.'s Mem. 13-16. Although the IDEA guarantees disabled students a free appropriate public education, it does not guarantee that "this education will be designed according to the parent's desires." *Shaw v. District of Columbia,* 238 F. Supp. 2d 127, 139 (D.D.C. 2002) (citing *Rowley,* 458 U.S. at 207); *Kerkam,* 862 F.2d at 887 ("[P]roof that loving parents can craft a better program than the state does not, alone, entitle them to prevail under the [IDEA]."). The state satisfies the IDEA "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley,* 458 U.S. at 203. Courts consider a number of factors when evaluating the appropriateness of the location of services, including "the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services offered by the school, the placement's cost, and the

extent to which the placement represents the least restrictive environment." *Branham v. District of Columbia*, 427 F.3d 7, 12 (D.C. Cir. 2005) (citation omitted).

The administrative record here unequivocally shows that Eastern could provide the special educational services required by R.C.'s IEP. R.C.'s IEP requires, among other things, specialized instruction outside the general education setting. Although plaintiff makes much of the fact that as of the June 2013 IEP, Eastern's special education classroom had not yet been created, plaintiff has not shown that DCPS was unable to implement the necessary program. *See* Pl.'s Mem, at 13. To the contrary, DCPS officials testified that while at Eastern, R.C. would receive the requisite specialized instruction in a separate classroom, complete with a certified special education teacher and a classroom aide. *See* AR at 720-721. Kingsbury was undoubtedly a sound educational milieu, but DCPS has made available to R.C. a free appropriate public education, and, as such, it cannot be required to pay for the education plaintiff would prefer.

## IV. Testimony of an Undisclosed Witness During the Due Process Hearing

Finally, plaintiff argues that the HO abused its discretion by allowing the testimony of an undisclosed witness, DCPS Program Monitor Alan Shih, at the due process hearing. Pl.'s Mem. at 7. Unfortunately for plaintiff, the IDEA vests Hearing Officers with precisely such discretion. In general, parties must disclose the names of all witnesses they intend to call five days before the due process hearing. 34 C.F.R. § 300.512(a)(3), (b)(1). This rule is not, however, absolute. The Standard Operating Procedures of the Special Education Hearing Office ("SOP") make clear that "[i]t is *within the discretion* of the Hearing Officer" to determine whether to exclude evidence

11

violating this rule. Def.'s Ex. 1, at § 500 (emphasis added) [Dkt. #15-1]; *see also* 20 U.S.C. § 1415(f)(2)(b) ("A hearing officer *may* bar" evaluations or recommendations not disclosed five days prior to the hearing (emphasis added)); 34 C.F.R. § 300.512(b)(2) (same). Here, although DCPS omitted Shih's name from its witness list, plaintiff was neither prejudiced nor surprised by DCPS's desire to introduce Shih's testimony. Shih's CV was attached to the exhibit list, thereby giving plaintiff ample warning that DCPS might introduce his recommendations. *See* AR at 835. Moreover, Shih, having observed R.C.'s classroom behavior on numerous occasions, played an indisputably critical role in the MDT meetings that culminated in R.C.'s transition. *See* AR at 238-239. As such, plaintiff can hardly claim that she was blindsided by his testimony. The HO's discretion was, as a result, properly exercised.

## CONCLUSION

For the all of the foregoing reasons, the Court GRANTS defendants' Cross Motion for Summary Judgment [15] and DENIES plaintiff's Motion for Summary Judgment [14].

RICHARD J. LEON
United States District Judge